**CITY OF DALLAS v. FRANK.**

No. 11735.

Court of Civil Appeals of Texas. Dallas.
March 10, 1934.

Rehearing Denied April 7, 1934.

Hugh S. Grady, H. P. Kucera, W. Hughes Knight, and A. J. Thuss, all of Dallas, for appellant.

John A. Erhard and Dick P. Wood, both of Dallas, for appellee.

JONES, Chief Justice.

This is an appeal from a judgment refusing, on a hearing, to dissolve a temporary writ of injunction theretofore issued, restraining appellant from "forcibly entering the premises of the plaintiff, Tom Frank, and dispossessing him of or causing him to vacate such premises known as Tom Frank's Place, and from molesting or in any wise interfering with his peaceable pursuit of his business, and from cancelling, abridging or abrogating his contract with the defendant." The injunction was issued in a pending suit filed by appellee, Tom Frank, against appellant, City of Dallas, and its executive officers.

The case is before this court on an agreed statement of the material facts, as there was no dispute as to the facts on the motion to dissolve the temporary writ of injunction. There is presented, therefore, only a question of law as to the legal effect of the undisputed facts.

On May 1, 1933, appellee and appellant city, through its park board, entered into a written contract, under the terms of which appellee was given a concession to operate a place of business on land owned by appellant and dedicated for use as a public park, under the name of White Rock Reservoir. Appellee's right to operate such place of business was to

end April 30, 1934. For several years theretofore appellee had been granted such concession each year, and for the contract under review was charged a consideration of $150; this consideration had been paid. There were located on said premises a frame building and two smaller buildings, owned by appellee. These buildings are described as being "portable," and had been constructed long prior to the execution of the instant concession contract.

Paragraph 1 of the contract declares that appellee is given the right "for carrying on concessions hereby granted, and to construct thereon a stand, and to maintain thereon a business of renting (boats) and selling minnows and refreshments, confections, cold drinks, cigars, tobaccos and groceries."

Paragraph 4 of the contract provides that "appellee shall conduct the business herein allowed at all times in strict accordance with the charter and ordinances of the City of Dallas, regulating and controlling White Rock and the property adjacent thereto, belonging to the City of Dallas, and the rules and regulations of the Park Board and other duly constituted authority, and such future charter or ordinances, rules and regulations, and directions, as may be hereafter passed."

Paragraph 6 of said contract reads: "It is hereby agreed that any time the Park Board may deem advisable it may cancel the rights herein granted to the Contractor, and in such event the consideration shall be prorated and the Contractor may be required to pay for the actual time he is permitted to use the said ground and may be granted a refund if he has paid for more than such time. If at any time the Park Board deems it advisable to cancel the rights of said Contractor herein, the Contractor agrees that upon ten days notice to him by the City of Dallas, he will vacate said premises without delay, and in case Contractor fails to vacate said premises upon said notice aforesaid, the City of Dallas shall have the right to enter the premises and dispossess the Contractor without any further notice; and it is expressly stipulated and agreed that the City of Dallas shall not be responsible for said damage caused by the cancelling of the privileges herein granted, nor shall it be responsible for any damage that might occur to said Contractor by virtue of the City of Dallas forcibly entering and dispossessing the said Contractor."

Under paragraph 10 of the concession contract, appellee binds himself at all reasonable times to keep for sale and shall supply the public with all brands of cold drinks, including Coca-Cola and Dr. Pepper, properly iced and ready to serve to the public, for which there shall be a reasonable demand. This paragraph also provides that what is known as "popular prices" shall be charged for his goods, and that by "popular prices" is meant that all 5 cent drinks shall be sold for 5 cents.

The agreed statement of facts shows: That the lands on which is operated appellee's business, under his concession contract, are the property of the city of Dallas, and consist of a part of its public park system under the control and jurisdiction of the park board, and that White Rock Reservoir is one of several parks under the control of such board, and located in the metropolitan area of the city of Dallas. That appellee had operated his concession under contractual relations between himself and the city of Dallas for a number of years. That the improvements made on the premises used by appellee were made long prior to May 1, 1933, and that the buildings thereon are owned by appellee. That appellee has the right to remove same at any time. That on September 12, 1933, the park board adopted and caused to be recorded on the minutes of such board the following order: "It was moved, seconded and carried that park concessionaires be advised that the selling of beer will not be permitted in municipally owned parks in the City of Dallas." That appellee was at once given written notice of the adoption of such regulation. That, under the advice of the legal department of the city of Dallas that it had the power to do so, on September 26, 1933, the park board adopted a resolution that appellee be given legal notice to vacate his concession site within ten days, for the reason that he had been violating park regulations by the selling of beer at his concession stand, and that the notice authorized by such resolution was duly served upon appellee, and appellee was further advised that if, at the end of the ten days from the date of such notice, he had failed to vacate and abandon said premises, the city of Dallas would have the legal right to enter such premises and dispossess him, without further notice. Appellee was also informed that the park board would refund to him any pro rata part of the consideration he had theretofore paid, because of the unexpired term of his contract; that the reason assigned by the park board for canceling appellee's concession contract was the fact that he was selling 3.2 beer on the premises in question; that appellee admits he has been selling 3.2 beer on the premises ever since it was legalized by law, i. e., since September 15, 1933; that appellee has been tendered by the park

board, 'as a refund to him, that portion of the $150 consideration represented by the unexpired portion of the year; and that such board stands ready and willing to pay same.

Section 217 of the charter of the city of Dallas vests control of park property in the park board; and section 215, supra, declares that "The Park Board shall adopt such rules and regulations as it may be deemed best for the management of the public parks of the City, and shall elect one of its members president of the Park Board."

█ It thus appears from the contract that appellee's concession to serve the public with cold drinks and the other commodities mentioned therein was made subject to the "rules and regulations of the Park Board and other duly constituted authority, and such future charter or ordinances, rules and regulations and directions, as may be hereafter passed." At the time the contract was entered into, 3.2 beer could not be legally sold in the city of Dallas, and it is elementary that his contract did not include the right to sell such beverage when the contract was executed. No part of the consideration paid was for such right.

On September 15, 1933, the sale of 3.2 beer was legalized in the city of Dallas, but this change in the status of such beverage did not enlarge appellee's concession; it remained the same and included only those commodities that were in contemplation of the parties at the time the concession contract was entered into. When the consideration was fixed by agreement of the parties at $150 per year, to be paid in installments of $75 in cash and $75 at the end of the first six months, it was fixed in view of those cold drinks that could be legally sold, and not in view of those that were prohibited by law to be sold at that time, though subsequently, by change of law, might be legally sold. The conclusion therefore is inescapable that appellee had no contractual right to sell 3.2 beer under the terms of the concession granted him.

█ However, if we concede that, from the time the sale of 3.2 beer became legal in the city of Dallas, appellee's concession was enlarged to include 3.2 beer in the concession rights granted him by his contract, there is still an insuperable barrier to appellee's right to sell such beverage. The park board, by section 217 of the city charter, is granted "exclusive jurisdiction over the control and management and maintenance of the public parks of the City of Dallas"; and section 215, supra, declares that "The Park Board shall adopt such rules and regulations as it may deem best for the management of the public parks of the City." Under this power, the park board could prohibit the sale of any beverage or commodity within the park territory of the city that it did not believe was for the best interest of the public in its use of the park.

On September 12, 1933, three days prior to the legalizing of the sale of 3.2 beer, the park board passed a regulation declaring that "Park concessionaires be advised that the selling of beer will not be permitted in municipally owned parks in the City of Dallas." By paragraph 4 of the contract in question appellee bound himself to conduct his business, not only under the rules and regulations of the park board and other duly constituted authority, as such rules and regulations then existed, but also under "such future charter or ordinances, rules and regulations and directions, as may be hereafter passed."

When appellee elected to ignore the regulation of September 12, 1933, duly passed by the park board, prohibiting the right to any concessionaire to sell, within the territory of any park owned by the city of Dallas, 3.2 beer, he violated the terms of his contract, and thereby, under the terms of paragraph 6 thereof, the park board was authorized to cancel the concession contract and to direct him to cease to operate thereunder. The following authorities sustain the views herein expressed: Alabama Oil & Pipe Line Co. v. Sun Co., 99 Tex. 606, 92 S. W. 253; Halldeman v. Chambers, 19 Tex. 1; Johnston et al. v. Fort Worth Driving Club (Tex. Civ. App.) 164 S. W. 875; Coleman v. Ford Motor Co., 195 Mo. App. 554, 193 S. W. 866; Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10; Fort Worth Driving Club v. Fort Worth Fair Association, 103 Tex. 24, 122 S. W. 254, Ann. Cas. 1912D, 67.

We therefore hold that, as the undisputed facts show that the park board had the legal right, under the concession contract and under the rules and regulations which all concessionaires must obey, to cancel the contract, the court erred in granting the temporary writ of injunction, and such injunction is hereby dissolved.

Reversed, and temporary writ of injunction dissolved.